UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RIZWAN SHAH**,<br><br>           Plaintiff,<br><br>      v.<br><br>**GUIDEHOUSE, LLP**,<br><br>           Defendant. | Civil Action No. 20-cv-3464 (TSC) |

### MEMORANDUM OPINION

On October 28, 2020, Plaintiff Rizwan Shah filed suit against his former employer, Guidehouse LLP, in the Superior Court of the District of Columbia. Shah alleged four counts of discrimination based on race, color, national origin, and religion under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, two counts of retaliation under the DCHRA, and one count of conversion. Guidehouse removed the case to this court, claiming diversity jurisdiction, then moved to transfer venue to the United States District Court for the Southern District of New York, ECF No. 7; ECF No. 1, Not. of Rem. ¶¶ 7–9. For the reasons set forth below, the court will GRANT Guidehouse's motion and transfer this action to the Southern District of New York.

### I.    BACKGROUND

Shah was a Partner in the Public Sector division of PriceWaterhouseCoopers LLP's Washington D.C. office since early 2016. Pl.'s Opp. to Mot. for Transfer at 2, ECF No. 11. In May 2018, that division was purchased by Veritas Capital, transacting as Eton Holding Corporation and renamed "Guidehouse LLP." *Id.* at 2-3.

Shah's new employment agreement with Guidehouse included a provision that partners could "terminate the[ir] . . . employment . . . for Good Reason" in the event of a "material

Page **1** of **6**

reduction of Employee's total cash compensation opportunity," and a forum selection clause mandating that "[a]ny dispute or claim arising out of or relating to this agreement . . . shall be brought exclusively in the . . . Southern District of New York." Employment Agreement §§ 3(e)(B), 17 ECF No. 12 (emphasis removed). The agreement also included a grant of Class A and Class B shares in Guidehouse; Shah signed a separate LLC Agreement related to those shares that included a similar forum-selection clause. Def.'s Mot. to Transfer at 2 n.2. Guidehouse described Shah as a "well-regarded [and] high-performing" executive employee. *Id.* at 1.

In February of 2019, Shah learned that Guidehouse intended to change partner compensation from an individual, performance-based model to a variable compensation model. Pl.'s Opp. to Mot. to Transfer at 4. According to Shah, Guidehouse's Chief Executive Officer offered "lucrative opt-out packages to partners who would be financially disadvantaged" by this new compensation model. *Id.* What happened next is unclear, and the subject of ongoing litigation in the Southern District of New York. *See* Compl., *Guidehouse LLP v. Shah*, No. 19-cv-9470 (S.D.N.Y. Oct. 14, 2019), ECF No. 1 ("*Shah I* Compl."). Uncontroverted, however, is that Shah filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination (Form 5) with the EEOC's Washington Field Office and the District of Columbia Office of Human Rights, alleging race, national origin, religion, and family responsibility discrimination, as well as retaliation for engaging in protected activities. Not. of Rem. Ex. 1, Original Compl. ¶ 44. Specifically, Shah alleged that only partners who were "white, not Muslim, not from India, and who had long-standing relationships with" Guidehouse's CEO were offered opt-out packages. *Id.* 21-30. In August 2019, Shah exercised the "Good Reason" clause of his Employment Agreement and resigned from Guidehouse. *Id.* ¶¶ 47-48.

On October 14, 2019, Guidehouse filed suit in the Southern District of New York, seeking a declaratory judgment that Shah was neither entitled to exercise the Good Reason clause, nor to receive any severance pay under that provision. *Shah I* Compl. ¶¶ 43-47. On October 28, 2020, Shah filed suit in the Superior Court for the District of Columbia, alleging unlawful discrimination and retaliation under the DCHRA, as well as conversion. *See* Not. of Rem., Ex. 1., Pl.'s Compl. ¶¶ 52-114, ECF No. 1-1. Guidehouse removed that action to this court on November 27, 2020, and promptly moved to transfer the case to the Southern District of New York on December 7, 2020, ECF Nos. 1, 7.

## II.    LEGAL STANDARD

A court may grant a motion to transfer "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Normally, this requires the court to consider these private and public interest factors and decide if transfer is appropriate. *See Atl. Marine Constr. Co. v. United States Dist. Court for W.D. of Tex.*, 571 U.S. 49, 62-63 (2013). "That calculus changes" when the parties' agreement contains a valid forum selection-clause, which is "given controlling weight in all but the most exceptional cases." *Id.* (internal quotation marks omitted) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (Kennedy, J., concurring). Even then, transfer is not automatic; the court must still evaluate § 1404's public interest factors, although it is rare that those factors would defeat a transfer motion. *Id.* at 62-64; *see also Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019) ("As long as the forum-selection clause is applicable, mandatory, valid, and enforceable . . . . we will enforce—and give deference to—that contractual choice."). The non-movant bears the burden of demonstrating that transfer would be improper. *Atl. Marine Constr. Co.* 571 U.S. at 63-64.

### III.   ANALYSIS

Neither party disputes the forum-selection clause's validity.  Pl.'s Opp. to Mot. to Transfer at 7; Def.'s Mot. to Transfer at 1.  However, the parties disagree whether the contract— valid forum selection clause or not—governs this dispute.  The court must thus decide this threshold question before completing the § 1404(a) analysis.

Shah argues that because the employment agreement does not specially address the opt-out packages, his claims falls outside the scope of agreement and the forum-selection clause does not apply.[1]  Pl.'s Opp. to Mot. Transfer at 12.  But the forum-selection clause in the employment agreement covers "[a]ny dispute or claim *arising out of or relating to* this agreement. . . ." Employment Agreement § 17 (emphasis added).

The term "relating to" gives a forum-selection clause an "expansive reach" to govern even claims that are not explicitly written into a contract.  *See, e.g.*, *Dahman v. Embassy of Qatar*, 364 F. Supp. 3d 1, 7 (D.D.C. 2019) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967)) (internal quotation marks omitted).  The fact that a plaintiff pleads their claim as a tort is not determinative; forum-selection clauses "are often found applicable to non-contract claims."  *See Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, 189 F. Supp. 3d 61, 67 (D.D.C. 2016) (citing *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 122 (D.D.C. 2008)) (citation omitted); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588, 596–97 (1991) (negligence); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 4, 20 (1972) (same); *Marra v. Papandreou*, 216 F.3d 1119, 1124 n.4 (D.C. Cir. 2016) (expropriation). Thus, the court must "examine the substance of the claims shorn of their labels' and 'focus on

---

[1] Shah does not challenge the transfer of his conversion claim, so the court analyzes only his DCHRA claims.  Pl.'s Opp. to Mot. to Transfer at 23.

factual allegations rather than on the causes of actions asserted.'" *Id.* (citing *Cheney*, 583 F. Supp. 2d at 122) (internal quotation marks omitted).

Having reviewed the facts alleged, the court finds that the forum-selection clause applies to Shah's claims. Shah avers that he was precluded from "lucrative separation packages" by virtue of his race, color, national origin, and religion. Compl. ¶¶ 56, 64, 72, 80. He also indicates that his retaliation claims, which arise out of an alleged proposed reallocation of his Class A and B shares, arise from those same classifications, as well as his "family responsibilities." *Id.* ¶ 93, 102-03. Shah therefore alleges a non-contractual motivation for a contractually related outcome. But a "lucrative separation agreement" is no different than a "severance payment," which is explicitly provided for in section 3(c) of the employment contract. And any alleged retaliatory withholding of Class A or B shares is also contemplated by sections 2(c)(i)(A) and 2(e) of Shah's employment agreement. Consequently, resolving Shah's discrimination claims necessarily involves interpreting the employment agreement and therefore fall within the ambit of the forum-selection clause.

Having reached this conclusion, the court must consider the public interest factors, mindful that these factors rarely override a forum-selection clause. *See Atl. Marine Constr. Co.*, 571 U.S. at 64. These factors include: (1) the local interest in deciding local controversies; (2) relative court congestion; and (3) the transferee court's familiarity with the governing laws and the pendency of related actions in the transferee's forum. *See, e.g.*, *Forest Cnty. Potawatomi Cmty. v. United States*, 169 F. Supp. 3d 114, 117 (D.D.C. 2016); *see also Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6 (listing factors). Shah argues that his claims under District of Columbia law "are better handled by a judge sitting in and familiar with the laws of the District of Columbia." Pl.'s Opp. to Mot. Transfer 16. Next, he contends that "[j]udicial economy" is

better served by keeping the case in this forum because a consolidation of the cases would force parties to redo discovery and thus "inconvenience the parties and the courts." *Id.* at 17.  Finally, he claims that he would lose his right to a jury trial if the case were transferred because the employment agreement forecloses that right. *Id.* at 19.

These arguments are not of the "most exceptional" character necessary to defeat a motion to transfer. *See Stewart Org.*, 487 U.S. at 33 (Kennedy, J., concurring).  First, the Southern District of New York would not be applying District of Columbia law, but would be applying New York law, as contemplated by the choice-of-laws clause in the employment agreement, ¶ 17.  Second, Guidehouse correctly observes that there is no guarantee that the transferred case would be consolidated, nor that there is any reason that duplicative discovery would be more likely in this court as opposed to one more familiar with *Shah I*.  Def.'s Reply at 6-7, ECF No. 14.  Finally, Shah's concern about trial by jury is not a public interest factor, and thus unavailing in an argument against transfer.  Shah has neither met his burden to defeat the import of the forum-selection clause nor to convince the court of its inapplicability, and therefore this action will be transferred to the Southern District of New York.

### IV.   CONCLUSION

For the foregoing reasons, the court shall GRANT Defendant's Motion to Transfer Venue, ECF No. 7.  An appropriate order will accompany this memorandum opinion.

Date: March 2, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge